IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Arthur L. Lewis, Jr., et al., | ) |
|         Plaintiffs, | ) ) ) Case No. 1:98-cv-5596 |
|     v. | ) ) Judge Joan B. Gottschall |
| City of Chicago, | ) ) |
|         Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

After 14 years of litigation, including an eight-day bench trial and a decision by the United States Supreme Court, this class action employment discrimination case was closed in 2011 when the court entered a final judgment, that is, an injunctive order dated August 17, 2011 ("injunctive order," ECF No. 470). In November 2023, an attorney filed a notice of appearance, ECF No. 762, on behalf of members of the plaintiff class and a motion, ECF No. 763, to enforce the injunctive order and issue a rule to show cause. Although the motion is titled as one to enforce the injunctive order, the moving plaintiffs expressly request that this court modify the injunctive order under Rule 60(b)(5) of the Federal Rules of Civil Procedure. *E.g.*, Mem. Supp. Mot. to Enforce 12, ECF No. 764. The motion's substance controls, so it must be analyzed under Rule 60(b)(5). *See Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832, 840 (7th Cir. 2021). For the following reasons, the court denies the motion without prejudice.

**Background**

Prior orders and opinions detail this case's complex factual and procedural history. They are collected in the margin.[1]

This litigation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, arose out of the City's 1995 examination administered to applicants

---

[1] *Lewis v. City of Chicago ("Lewis III")*, 560 U.S. 205, 208–10 (2010); *Lewis v. City of Chicago* ("*Lewis IV*"), 702 F.3d 958, 958–59 (7th Cir. 2012); *Lewis v. City of Chicago* ("*Lewis II*"), 2007 WL 869559, at *1 (N.D. Ill. Mar. 20, 2007); *Lewis v. City of Chicago* ("*Lewis I*"), 2005 WL 693618, at *1–6 (N.D. Ill. Mar. 22, 2005).

for a job with the Chicago Fire Department ("CFD"). *See Lewis III*, 560 U.S. at 209–10 & nn. 1–2. In 1999, without opposition from the City, this court certified a class of more than 6,000 African-American applicants who took the test. *See* Min. Order (Dec. 15, 1999), ECF No. 59. After a bench trial, the court found that the City violated Title VII by using a cutoff score of 89 on the test and concluded that the City's hiring practices had an unjustified disparate impact on class members. *Lewis III,* 560 U.S. at 209; *Lewis I,* 2005 WL 693618, at *10–15 (N.D. Ill. Mar. 22, 2005). The City appealed, and the Supreme Court ultimately affirmed this court's finding of liability. *Lewis III,* 560 U.S. at 217.

The parties litigated remedies for two years in 2005–07. To that end, this court joined Chicago Firefighters Union Local #2 ("the Union") and The Firemen's Annuity and Benefit Fund of Chicago as non-aligned parties for the limited purpose of determining what relief to award. On March 20, 2007, this court issued a memorandum opinion and order ruling on remedies issues. ECF No. 391. It was impossible to determine which class members would have been hired absent the City's discriminatory hiring practices, so as a partial remedy the court ordered the City to hire randomly selected class members referred to as "the shortfall group." *Lewis II,* 2007 WL 869559 at *1.

As relevant to the instant motion, the court ruled on the parties' competing proposals on how to award retroactive seniority to members of the shortfall group. *Id.* at *3. The following quotation from the 2007 opinion encapsulates the parties' arguments and the court's decision:

> Plaintiffs propose that the court adopt an "average" seniority date . . . and that all members of the shortfall group shall be credited with seniority retroactive to that date. The City, with the support of the Union, argues that the shortfall group should be credited by lot with seniority between May 16, 1996, and November 1, 2002, according to the number of shortfalls for each class. That is, class members would be randomly assigned to each Academy class which matriculated between May 16, 1991 and November 1, 2002, according to the number of shortfalls for each class. This better achieves, the City argues, the "make whole" concept of Title VII relief.
>
> * * * *
>
> The plaintiffs' proposed method has the advantage of great simplicity. All . . . members of the shortfall group would have the same seniority date, easily calculated. The plaintiffs' proposed method has another advantage: it does not try to achieve precision when precision is impossible: it is therefore honest. In other

2

>words, it does not attempt to give certain persons advantages that others, not they, would have enjoyed had the test not been employed in a discriminatory manner. . . . The court therefore adopts plaintiffs' proposal of an average seniority date applicable to all members of the shortfall group.

*Id.* The court adopted a single retroactive seniority date of June 1, 1999, for all shortfall group members. *Id.*

Separately, the court considered plaintiffs' requests that the court alter the applicable Collective Bargaining Agreement's ("CBA") time-in-grade requirements for promoting members of the shortfall group and compel the City to administer promotional exams on an expedited basis. *See id.* at *2–3. Section 9.3(b) of the CBA imposed (and continues to impose)[2] a 54-month time-in-grade requirement. *Id.* at *2. Under this requirement, once a candidate has taken a promotional exam, "no employee may be promoted to engineer or lieutenant who has not completed fifty-four months in his/her prior classification." *Id.* In 2007, plaintiffs asked the court to lower the time-in-grade requirement for members of the shortfall group to 30 months. *Id.* The court stated that the evidentiary record and the parties' arguments on this subject were poorly developed. *See id.* at *1–3. The plaintiffs "argue[d], without evidentiary foundation, that the time-in-grade requirement serves no important (safety-related or other) function and the City and the Union argue[d] the opposite." *Id.* at *2. The evidence did not refute the proposition that "the time-in-grade requirement, whatever its purpose" had "the effect of delaying promotions until individuals have more experience and are better qualified." *Id.* at *3.

On the record at the time, this court also declined to order the City to schedule early promotion exams for members of the shortfall group to make up for missed promotional opportunities between 1995 and their entry into the Firefighters' Academy, which ultimately occurred in 2012. *See id.* On balance and on the then-existing record, the court explained that "[r]equiring promotions when the City's operational needs do not require promotions" would have been "more disruptive to the CFD than compensatory to the plaintiffs." *Id.* (footnote

---

[2] Section 9.3(b) of the 2017 CBA sets a 54-month time-in-grade requirement before a firefighter becomes eligible for promotion to the ranks of firefighter and engineer. ECF No. 766-5 at 51–52. The ranks of captain and battalion chief require 30 months time-in-grade. *Id.*

3

omitted). The 2007 opinion added: "If plaintiffs so request, the court can consider giving some monetary relief to the shortfall group for lost promotion opportunities." *Id.* No such request was made before entry of final judgment.

As this court instructed, *id.* at *9, the parties submitted a proposed consent decree consistent with the court's remedies rulings. Following an appeal and the Supreme Court's decision affirming liability, the case returned to this court in 2011. By consent of the parties, the controlling injunctive order was entered on August 17, 2011. ECF No. 470. The injunctive order is a consent decree, *i.e.*, "a court order that embodies the terms agreed upon by the parties as a compromise to litigation." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002) (citation omitted). The injunctive order required the City to hire 111 class members, *i.e.*, the shortfall group, and admit them to the Chicago Firefighters' Academy within 24 months. *See id.* ¶¶ (A)(2)–(5).

Consistent with the court's ruling on retroactive seniority, the injunctive order further provides, "Any class member hired pursuant to the terms of this Order shall be entitled, after completion of the contractual nine-month probationary period of employment, to retroactive seniority credit dating back to June 1,1999 for all purposes for which seniority is considered." *Id.* ¶ (B). One final provision of the injunctive order is relevant to the instant motion. The court appointed Annette Holt, then a member of the Chicago Fire Department, "to act as an ombudsman for persons hired pursuant to paragraph A4 [requiring hiring the shortfall group] during their Academy training, with responsibility for addressing the special needs and problems of people entering the Academy as a result of this lawsuit and for reporting to the court, if necessary, on the progress of the shortfall group." *Id.* ¶ (D)(1).

In November 2023, an attorney not previously involved in this litigation, Chiquita Hall-Jackson ("Jackson"), filed a notice of appearance and the pending motion to enforce judgment.[3]

---

[3] During briefing on the pending motion, attorney Sheridan Toddy Yeary filed a notice of appearance for the moving plaintiffs. ECF No. 782 (Mar. 4, 2024). Only attorney Jackson signed the instant motion and reply. *See* Reply 15–16, ECF No. 783.

4

Notice of Appearance, ECF No. 762. Counsel subsequently filed an appendix of five exhibits. ECF No. 766 (Dec. 11, 2023).

The court set a briefing schedule, which was twice enlarged by agreement. *See* ECF Nos. 765, 770, 781. Separate response briefs were filed by the City, ECF No. 776; the Firemen's Annuity and Benefit Fund of Chicago, ECF No. 777; and the union representing Chicago firefighters, ECF No. 779. Plaintiffs attached an appendix of seven additional exhibits to their reply brief filed March 28, 2024. *See* Am. Reply, ECF No. 787; App. to Reply, ECF No. 784. To respond to the new exhibits, the City sought and obtained leave to file a surreply. *See* Surreply (May 10, 2024), ECF No. 790.

Counsel brings the instant motion on behalf of all members of the shortfall group, consisting of 117 members of the Lewis class hired by the CFD.[4] *See* Mot. to Enforce 6–7; Am. Reply 3. In the instant motion, moving plaintiffs assert that they are seeking the "logical next step of seeking relief of [sic] lost promotional opportunities denied to them by the Defendant City of Chicago's unlawful and discriminatory hiring practices for Chicago firefighters." Mem. Supp. Mot. to Enforce 7. Broadly speaking, moving plaintiffs argue that they have been disadvantaged in scoring on promotion examinations by not receiving retroactive seniority to 1999 for purposes of the CBA's time-in-grade requirements. Moving plaintiffs seek to modify the injunctive order to provide additional relief for lost promotion opportunities. *See id.* at 19-20.

### Class Counsel

Before reaching the issues the parties have briefed, a threshold problem not discussed in the briefing must be addressed. Prior class counsel did not sign the pending motion to enforce or

---

[4] Plaintiffs represent that six of the 111 members of the shortfall group who entered the Chicago Firefighters' Academy in 2012 did not graduate, leaving 105. Am. Reply 3. Moving plaintiffs note that this was never reported to the court, but they do not request any relief based on that fact. *See id.* In addition to the 105, 12 additional Lewis class members who entered the CFD academy in 2015 have joined the instant action. These class members entered the academy in accordance with an order entered in *Godfrey v. City of Chicago*, No. 12-cv-08601. *Id.*

the reply brief, and nothing in the record suggests that class counsel approved the instant motion or participated in preparing it.

Unlike the current version of the rule, the version of Rule 23 in effect when this court certified the class in 1999 did not require a class certification order to appoint class counsel. *See* Fed. R. Civ. P. 23 (1999); *see also* Fed. R. Civ. P. 23 Advisory Committee's Note to 2003 Amendment (discussing addition of Rule 23(g)). The certification order entered in this case in 1999 did not expressly appoint class counsel. *See* ECF No. 59. Nonetheless, the record amply demonstrates that court-approved counsel represented the class in a manner consistent with the present-day version of Rule 23(g). For example, after final judgment was entered, four class members, represented by attorneys who had not previously appeared, moved to intervene, arguing that the named plaintiffs and class counsel did not adequately protect their interests. This court denied intervention as untimely, and the Seventh Circuit affirmed. *Lewis IV*, 702 F.3d 958 (7th Cir. 2012). The Seventh Circuit's opinion describes the case's procedural posture as the court and the parties understood it in 2012, speaking repeatedly of opposing arguments made by two groups: "class counsel" and the proposed intervenors, as in the following example: "The intervenors blame their inaction on class counsel. . . . (Class counsel respond that three of the four nonetheless knew, well before June 2012, when they sought to intervene, that they would not share in the remedy.)" *Id.* at 963. As this example shows, class counsel represented the class throughout this litigation, including after entry of judgment.

No order has been entered relieving court-appointed class counsel of their responsibilities. Because class counsel have been appointed, two avenues exist for absent class members and/or new attorneys to become involved in this closed case. The first is the procedure followed by the class members who moved to intervene in 2011. Absent class members ordinarily must move under Rule 24 to intervene in a certified class action. *See, e.g.*, *Zbaraz v. Madigan*, 572 F.3d 370, 376–78 (7th Cir. 2009); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 883 (7th Cir. 2000). Second, a lawyer has the option of moving to be substituted as counsel for the certified class. *See* Fed. R. Civ. P. 23(g).

Neither procedural avenue was taken before the instant motion was filed. The motion must be denied for this reason alone. *See Zbaraz*, 572 F.3d at 377–78. Because the parties did not raise the issue of current counsel's authority, the court will address the arguments made in briefs.

### Failure To Exhaust Title VII Remedies

The City argues that plaintiffs' motion should be denied because they did not exhaust their administrative remedies, as required by Title VII. Moving plaintiffs should, the City contends, be required to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), receive a right to sue letter, and then file new lawsuits challenging the City's promotion decisions made after 2012. *See* City Resp. 13–15, ECF No. 776. The City cites no authority supporting the proposition that Title VII exhaustion is required before the court can entertain a motion to enforce or modify a consent decree. *See id*. No such authority exists.

The injunctive order states: "The Court shall retain jurisdiction of this action for purposes of construction, implementation and enforcement of the terms of this Order." Injunctive Order 12. Language such as this in a judgment preserves the court's jurisdiction, that is its power, to enforce and interpret a consent decree after it is entered. *See generally Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–92 (1994); *Jones v. Ass'n of Flight Attendants-CWA*, 778 F.3d 571, 573 (7th Cir. 2015) (collecting cases concerning preserving a district court's jurisdiction upon entry of judgment). Even without jurisdiction-retaining language, the equitable nature of a consent decree invests the court that enters it with continuing jurisdiction to enforce, and if necessary, modify it. *See O'Sullivan v. City of Chicago*, 396 F.3d 843, 867–68 (7th Cir. 2005) (citing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 432 (2004)); *Komyatti v. Bayh*, 96 F.3d 955, 962–64 (7th Cir. 1996). Consistent with these principles, this court has continuing jurisdiction to enforce or modify the 2011 injunctive order.

The Seventh Circuit's analysis and rejection of a similar argument in *United States v. City of Northlake*, 942 F.2d 1164 (7th Cir. 1991), provides helpful guidance. There, the government, and also the plaintiff, filed a motion to enforce a consent decree that resolved an employment-

7

discrimination suit against several Chicago-area municipalities. *See id.* at 1165–66. As in this case, the consent decree in *City of North Lake* required the municipalities to implement a comprehensive set of reforms. *See id.* The plaintiff moved to enforce the decree against the City of North Lake ("North Lake"), alleging that it was failing to implement one of the required reforms, specifically elimination of a residency requirement for hiring. Among other arguments, North Lake responded that the plaintiff was bypassing its option of filing a new lawsuit challenging the city's residency requirement. *See id.* at 1167–68. Construing the consent decree's plain language, the Seventh Circuit ruled that:

> there [was] no basis for concluding that the subjective hiring practices complained of [in the motion to enforce the consent decree] fall outside the comprehension of the consent decree. To suggest that the United States may proceed by way of a "fresh" complaint if it desires to litigate this issue, App. I at 5, undermines the purpose of a consent decree in the first instance—namely, to avoid protracted litigation by entering into a court-supervised agreement that resolves the dispute to the satisfaction of all parties concerned and guarantees the viability of the agreement under the watchful eye of the judge whose signature appears at the end of the document.

*Id.* at 1168. Additionally, requiring a plaintiff to "file a new lawsuit to remedy allegedly illegal conduct already embraced by a consent decree would serve as a disincentive to civil rights plaintiffs contemplating whether or not to enter into such a decree." *Id.*

The Seventh Circuit's reasoning in *City of North Lake* applies here. There is no serious dispute that the moving plaintiffs' allegations directly implicate the substance and administration of the remedial scheme embodied in the injunctive order. The injunctive order's retroactive seniority provisions were no afterthought. They represent the results of protracted litigation and negotiations among representatives of the class, the City, and other interested parties. The arguments moving plaintiffs now make concerning alleged unforeseen consequences falls comfortably within the injunctive order's compass. In these circumstances, *City of North Lake* teaches that moving plaintiffs' arguments should be addressed by this court without forcing them to start the litigation process over. *See City of N. Lake*, 942 F.2d at 1168; *accord. McGee v. Ill. Dep't. of Transp.*, 2002 WL 31478261, at *7 (N.D. Ill. Nov. 5, 2002). The City's exhaustion argument is therefore rejected.

8

**Modification of Consent Decree: Changed Circumstances**

Federal Rule of Civil Procedure 60(b)(5) authorizes a party to move for relief from a judgment if, among other reasons, "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Rule 60(b)(5) permits a court "to relieve from a consent decree any party who demonstrates that "a significant change in facts or law warrants revision of the decree." *Shakman*, 994 F.3d at 839–40 (7th Cir. 2021) (citing *Rufo*, 502 U.S. at 393). The party seeking to modify the judgment "bears the burden of establishing that changed circumstances warrant relief." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citing *Rufo*, 502 U.S. at 384). However, Rule 60(b)(5) "may not be used to challenge the legal conclusions on which a prior judgment or order rests." *Id.*

During the remedies phase of this case in 2005–07, the parties vigorously litigated how the shortfall group's retroactive seniority should be awarded. *See Lewis II,* 2007 WL 869559, at *3. The court ruled on the parties' competing proposals, concluding that on balance the equities favored setting a retroactive seniority date of June 1, 1999, for all shortfall group members with an exception to this date for purposes of the CBA's time-in-grade requirements ("time-in-grade exception"). *See id.*; Injunctive Order 4–5. In the pending motion to enforce, the moving plaintiffs argue that the time-in-grade exception has systematically hamstrung their ability to compete for promotions since 2012. *See, e.g.*, Mem. Supp. Mot. to Enforce 10, 15, 17, 19. Contrary to the City's position here, the fact that the parties litigated time-in-grade exception pre-judgment does not make that subject off limits under Rule 60(b)(5). Rather, the Rule 60(b)(5) inquiry in this situation focuses on whether circumstances have arisen that were unforeseen when the consent decree was entered. *See Rufo*, 502 U.S. at 308–81, 384.

The Seventh Circuit's exposition of Rule 60(b)(5) in *United States v. City of Chicago*, 978 F.2d 325, 333 (7th Cir. 1992), illustrates the point. Similar to the case at bar, the district court there had ruled that the City's police department violated Title VII by discriminating against women, Hispanic employees, and African-American employees in its promotion practices. *See id.* at 327. At the remedies stage, the district court held that members of the

9

plaintiff class were entitled to backpay and retroactive seniority. *See id*. at 327–28 & n.2. The parties proposed a consent decree consistent with the district court's rulings, which decree the district court entered. The decree included a formula under which class members would receive approximately 9% of their back pay and 100% of their retroactive seniority credit. *See id*. After the decree was entered, the Chicago Police Pension Board objected strenuously that it would be saddled with the cost of remedying the City's discrimination if it were required to recognize 100% of the class members' retroactive seniority because class members' pensions would be underfunded. *See id.* at 328–29. The Seventh Circuit explained that the Pension Board was not a party to the litigation, and its objection constituted a changed circumstance for which Rule 60(b)(5) relief was available. *See id*. at 333. Consistent with Rule 60(b)(5), the court of appeals explained that a consent decree modification "is appropriate where an unforeseen obstacle warrants revision of the consent decree, and a proposed modification is necessary in order for the decree to remedy adequately the constitutional or legal violation which it was designed to remedy." *Id.; see also United States v. Jupiter Aluminum Corp.*, 2009 WL 418091, at *5–6 (N.D. Ind. Feb. 18, 2009).

  Thus, upon a proper showing, Rule 60(b)(5) gives this court the discretion to modify the injunctive order's provisions concerning retroactive seniority, and it also gives this court the power to enforce them as written. But, for the following reasons, moving plaintiffs have not met their burden to show that a significant change in circumstances justifies Rule 60(b)(5) relief.

  To show that the injunctive order should be modified, moving plaintiffs cite unauthenticated exhibits comparing the shortfall group's promotion rate to the ranks of engineer, lieutenant, captain, and battalion chief with the promotion rates of Chicago firefighters who entered the Firefighters' Academy between 1996 and 2001. *See* App. to Mot. to Enforce Ex. 3, ECF No. 766-3; App. to Reply Ex. 3, ECF No. 784-5. According to those comparisons, the shortfall group lags far behind. For instance, fourteen percent of shortfall group members have been promoted to engineer while 83.54% of the class entering the Chicago Firefighters'

10

Academy in 1996 have been promoted to the rank of engineer or to a higher rank.[5]  *See* ECF No. 766-3 at 1.

Moving plaintiffs apparently attribute their lower promotion rates to the use of seniority in § 9.3(b) of the CBA as a component (up to 30%) of an applicant's score on a promotion test. But moving plaintiffs cite no evidence that would allow the court to analyze how and to what extent the seniority component of the shortfall group's examination scores contributed to their non-advancement.[6]  And nothing in the record sheds light on how, if at all, the CFD's promotion examinations and practices have changed since 2007 (when the court made its remedies decision) or 2011 (when the injunctive order was entered).  *See* Mot. to Enforce 6–12; Am. Reply 8–10.  Thus, moving plaintiffs have not identified any changed circumstances they allege contributed to their non-advancement.  The record must, but at present does not, show a substantial change in circumstances from 2007 or 2012, such as an unforeseen development that justifies revisiting the injunctive order's provisions on retroactive seniority.  *See Rufo*, 502 U.S. at 381; *City of Chicago*, 978 F.2d at 332.

In deciding not to disturb the CBA's time-in-grade requirements in 2007, this court explained that, in consideration of the public safety mission and apparent effect of enforcing the

---

[5] According to the unauthenticated exhibits, no member of the shortfall group has been promoted to lieutenant or battalion chief.

[6] As with the briefing on this issue in 2007, the present round of briefs and evidence "is characterized by much heat and little light." *Lewis II*, 2007 WL 869559, at *2.  The appendix of exhibits to the instant motion consists of five exhibits, none of which are cited in the motion itself. *Compare* Mot. to Enforce, ECF No. 763, with App to Mot. to Enforce, ECF No. 766-1 to 766-5.  Moving plaintiffs cite no exhibits in their opening motion, leaving it to the court to determine how, if at all, their exhibits support their position.  *See* ECF No. 763.  The reply brief includes a scattering of citations to exhibits, though no page numbers are cited, and there is often no meaningful guidance for interpreting the sometimes cryptic exhibits in the record.  Take, for example, exhibit 4 in the appendix to the instant motion, labelled as a set of exam results from a 2016 CFD promotion test.  ECF No. 766-4 at 1–17 (dated Aug. 30, 2018).  The exhibit consists of a table of test takers and results.  Some names on the list have been highlighted (by whom is unknown) in blue, green, yellow, or orange, yet what the highlighting and color selected signify is a mystery.  *See e.g., id.* at 7.  Following the result list is a three-volume, 340-page technical report.  *See id.* at 18–368.  If something important to moving plaintiffs' claims is buried in the report, they have not provided any citations to aid the court in finding it.  It is not the court's job to hunt through the record searching for morsels of evidence to substantiate unsupported claims in a party's brief.  As the Seventh Circuit has said many times, "Judges are not like pigs, hunting for truffles buried in the record." *Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) (brackets omitted) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

time-in-grade requirement, it was "unwilling to require that the City advance the date of promotional exams and expedite plaintiffs' eligibility for promotion without a thorough evidentiary presentation and legal analysis of the consequences and propriety of ordering such relief." *Lewis II,* 2007 WL 869559, at *3 n.1.

Neither the current round of briefing nor the present evidentiary record comes close to the thorough evidentiary presentation needed to justify revisiting the injunctive order's provisions on retroactive seniority. There is no exposition of what criteria were used in the City's promotion exams and decisions, no indication that anything in the promotion process has changed, and nothing approaching a thorough analysis of how the time-in-grade exception affected the shortfall group's promotion prospects. If moving plaintiffs want the court to modify the injunctive order, they must assemble an evidentiary record supporting their position, and they must comply with the strictures of Rule 60(b)(5) and identify a changed circumstance that justifies the relief they seek.

In their reply, moving plaintiffs suggest that they could develop a more fulsome factual record with the benefit of discovery. *See* Am. Reply 11. Moving plaintiffs have not requested discovery, and given the current lack of clarity surrounding who represents the plaintiff class, the court implies nothing about discovery. For the same reason, the court also declines to address moving plaintiffs' request that Holt be replaced as the class's ombudsman. The parties disagree about the scope of the ombudsman's duties, specifically whether they continued after the shortfall group graduated from the Chicago Firefighters' Academy. Until the court is certain that it has counsel before it who have the authority to bind the class, it declines to issue a ruling construing the injunctive order in a manner that would bind all class members.

## Conclusion

For the reasons stated, the court concludes that, upon a proper showing of changed circumstances, it has the authority to modify the injunctive order entered August 17, 2011. *See* Fed. R. Civ. P. 60(b)(5). However, the record on the pending motion does not demonstrate that such a modification is warranted. The motion is therefore denied without prejudice. Consistent

with this order, in the future previously-unnamed class members must apply to intervene under Federal Rule of Civil Procedure 24, and any attorney wishing to be appointed or substituted as class counsel must file an appropriate motion under Rule 23(g).

Dated: September 30, 2024                          /s/ Joan B. Gottschall
                                                                     United States District Judge