**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTHUR L. LEWIS, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 98-cv-5596 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM OPINION AND ORDER**

After more than a decade of litigation, including a trip to the United States Supreme Court, this class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, filed by African-American individuals who took the City of Chicago's 1995 written Firefighters Examination, culminated in a consent decree, that is, an agreed order awarding injunctive relief. Injunctive Order, Dkt. No. 470 (Aug. 17, 2011). Since 2023, a subset of the class known as the "shortfall group" has been seeking to modify portions of the consent decree awarding them retroactive seniority to 1999 rather than to 1995. *See id.* at 4–5.

In 2024, this court denied a motion to enforce and modify the consent decree filed by attorneys representing the shortfall group. *Lewis V*, 2024 WL 4346872, at *8 (N.D. Ill. Sept. 30, 2024). The 2024 opinion concluded, among other things, that the record did not then carry the shortfall group's burden to show that a material change in circumstances warranted modifying the consent decree under Rule 60(b)(5) of the Federal Rules of Civil Procedure. The court expressed no opinion about whether the shortfall plaintiffs should be permitted to conduct discovery to attempt to gather the evidence they believe they need to make a record justifying modification of the consent decree under Rule 60(b)(5). *Id.* That question is now before the court.

Now represented by substitute class counsel, shortfall plaintiffs have filed a motion for leave to conduct post-judgment discovery, contending that the evidence they need to establish that the consent decree should be modified is under the City of Chicago's exclusive control. Mot. Leave to Conduct Discovery, Dkt. No. 814. The City opposes post-judgment discovery as unduly costly and burdensome, characterizing it as "an Unabashed Fishing Expedition." Resp. to Mot. Leave to Conduct Discovery 4, Dkt. No. 818. As explained herein, shortfall plaintiffs have carried their burden to obtain limited discovery, but it must be narrowly drawn and tailored.

## I. Background

The 2024 opinion recites the pertinent factual and procedural background. *See Lewis V*, 2024 WL 4346872, at *1–2 & n.1 (collecting citations to prior opinions in footnote one). The reader's familiarity with this history is presumed. To recap, this case arose from the 1995 Firefighters Examination. *See id.* at *1. After certifying a class of more than 6,000 African-American applicants who took the test, this court held a bench trial and found that "the City's hiring practices had an unjustified disparate impact on class members." *Id.* (citing *Lewis I*, 2005 WL 693618, at *10–15 (N.D. Ill. Mar. 22, 2005); other citation omitted). The parties then litigated remedies, including retroactive seniority. *See id.* at *2–3. "It was impossible to determine which class members would have been hired absent the City's discriminatory hiring practices, so as a partial remedy the court ordered the City to hire randomly selected class members referred to as 'the shortfall group.'" *Id.* at *3. The City ultimately hired shortfall plaintiffs in 2012. *Id.*

Regarding retroactive seniority for the shortfall group, the 2007 remedies ruling represented a compromise among the competing interests of, and proposals made by, the City, the union representing Chicago firefighters, and the plaintiff class. *See Lewis II*, 2007 WL 86955, at *1–2 (N.D. Ill. Mar. 20, 2007). As explained in the 2024 opinion:

> The court adopted a single retroactive seniority date of June 1, 1999, for all shortfall group members. *Lewis II*, 2007 WL 86955, at *3. Separately, the court considered plaintiffs' requests that the court alter the applicable Collective Bargaining Agreement's ("CBA") time-in-grade requirements

> for promoting members of the shortfall group and compel the City to administer promotional exams on an expedited basis. *See id.* at *2–3. Section 9.3(b) of the CBA imposed (and continues to impose) a 54-month time-in-grade requirement. *Id.* at *2. Under this requirement, once a candidate has taken a promotional exam, "no employee may be promoted to engineer or lieutenant who has not completed fifty-four months in his/her prior classification." *Id.* In 2007, plaintiffs asked the court to lower the time-in-grade requirement for members of the shortfall group to 30 months. *Id.* The court stated that the evidentiary record and the parties' arguments on this subject were poorly developed. *See id.* at *1–3. The plaintiffs "argue[d], without evidentiary foundation, that the time-in-grade requirement serves no important (safety-related or other) function and the City and the Union argue[d] the opposite." *Id.* at *2. The evidence did not refute the proposition that "the time-in-grade requirement, whatever its purpose" had "the effect of delaying promotions until individuals have more experience and are better qualified." *Id.* at *3.
>
> * * * *
>
> . . . By consent of the parties, the controlling injunctive order was entered on August 17, 2011. ECF No. 470. . . . The injunctive order required the City to hire 111 class members, *i.e.*, the shortfall group, and admit them to the Chicago Firefighters' Academy within 24 months. *See id.* ¶¶ (A)(2)–(5). Consistent with the court's ruling on retroactive seniority, the injunctive order further provides, "Any class member hired pursuant to the terms of this Order shall be entitled, after completion of the contractual nine-month probationary period of employment, to retroactive seniority credit dating back to June 1, 1999 for all purposes for which seniority is considered." *Id.* ¶ (B).

*Lewis V*, 2024 WL 4346872, at *2–3 (brackets in original; paragraph break omitted).

In 2023, new counsel appeared and moved to enforce or modify the consent decree's retroactive seniority provisions on behalf of the shortfall group. Mot. to Enforce and for Rule to Show Cause, Dkt. No. 763. The shortfall group argued that they have been systematically "disadvantaged in scoring on promotion examinations by not receiving retroactive seniority to 1999 for purposes of the CBA's time-in-grade requirements." *Lewis V*, 2024 WL 4346872, at *3. Then, as now, shortfall plaintiffs "seek to modify the injunctive order to provide additional relief for lost promotion opportunities." *Id.* (citing Mem. Supp. Mot. to Enforce 19–20, Dkt. No. 764).

The 2024 opinion held that Rule 60(b)(5) governed the shortfall plaintiffs' request to modify the consent decree. *Id.* at *6–7 (citing *Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832,

840 (7th Cir. 2021)). This court went further, finding that Rule 60(b)(5) "authorizes a party to move to vacate or modify a judgment if, among other reasons, 'applying it prospectively is no longer equitable.' The rule permits a court 'to relieve from a consent decree any party who demonstrates that a significant change in facts or law warrants revision of the decree.'" *Id.* at *6 (quoting *Shakman*, 994 F.3d at 839–40). This court ruled that it has the power to modify the consent decree under Rule 60(b)(5), but nonetheless denied the shortfall plaintiffs' motion because they did not meet their "burden to show that a significant change in circumstances justified Rule 60(b)(5) relief." *Id.* at *7; *see id.* at *8. The 2024 opinion states:

> Neither the current round of briefing nor the present evidentiary record comes close to the thorough evidentiary presentation needed to justify revisiting the injunctive order's provisions on retroactive seniority. There is no exposition of what criteria were used in the City's promotion exams and decisions, no indication that anything in the promotion process has changed, and nothing approaching a thorough analysis of how the time-in-grade exception affected the shortfall group's promotion prospects.

*Id.* at *8. The court expressed no opinion, however, on whether, as was suggested in a brief reply, the shortfall plaintiffs could or should be allowed to conduct discovery. *See id.* That question is now before the court.

The pending motion for leave to conduct discovery is supported by the declarations of six members of the shortfall group. Each declarant explains how he or she was disadvantaged in competitive promotion examinations by the 1999 retroactive seniority date. *See* Dkt. Nos. 793-1 to 793-6, Ex. A–F. Shortfall plaintiff Darrell Payne, for example, avers that he took the 2016 exam for promotion to Fire Engineer. Dkt. No. 793-5, Ex. E ¶ 4. Owing to the 1999 retroactive seniority date, Payne avers that he was deducted 13.1712 of 30 possible seniority points, which reduced his ranking on the promotion eligibility list by more than 250 positions. *Id.* ¶ 5. The City does not dispute the facts asserted in shortfall plaintiffs' declarations. Dkt. Nos. 793-1 to 793-6. Nor has it submitted evidence in response to the instant motion. *See* Resp. to Mot. Leave to Conduct Discovery.

## II. Analysis

The parties dispute the source and scope of the court's authority to authorize post-judgment discovery. The City relies on the 2024 opinion's ruling that the record at that time did not suffice to support modification under Rule 60(b)(5). *See Lewis V*, 2024 WL 4346872, at *8. The City contends that a party must first "make a threshold showing that [Rule 60(b)(5)] relief may be warranted" before allowing "open-ended discovery." Resp. to Mot. Leave to Conduct Discovery 6. Stated at a high level of generality, that proposition is unobjectionable, as are the other broad legal propositions the City invokes. It is clear beyond peradventure, for example, that a court does not abuse its broad discretion in managing discovery by denying leave to conduct discovery that is "based on nothing more than mere speculation and would amount to a fishing expedition." *Helping Hand Caregivers Ltd. v. Darden Rests., Inc.*, 900 F.3d 884, 890 (7th Cir. 2018), quoted in Resp. to Mot. Leave to Conduct Discovery 5. But the City fails to grapple with the crux of the shortfall plaintiffs' argument, which is that the City controls the key evidence needed to move to modify the consent decree. *See* Resp. to Mot. Leave to Conduct Discovery 5–6. The City does not dispute that it exercises exclusive control over the records and information shortfall plaintiffs are seeking.

For their part, shortfall plaintiffs cite Rule 26(d) of the Federal Rules of Civil Procedure repeatedly as the source of the court's ostensible authority to authorize discovery. But Rule 26(d)(1) creates a discretionary exception to the ordinary rule that discovery may not be taken until the parties conduct a discovery planning conference under Rule 26(f). *See* Fed. R. Civ. P. 26(d)(1), 26(f); *Mays v. Dart*, 2020 WL 2796082, at *6 (N.D. Ill. May 29, 2020). The parties to this litigation held a discovery planning conference decades ago, so Rule 26(d)(1) plainly does not apply to this post-judgment motion for leave to conduct discovery.

Shortfall plaintiffs also invoke the general proposition, surely true at a high level, that federal trial courts possess "discretion in managing the discovery process." *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) (citing *Merrill Lynch v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000)). But the Federal Rules of Civil Procedure treat discovery

after a judgment has been entered as the exception, not the rule. Indeed, Rule 16(b)(3) requires the court to issue a scheduling order after the discovery planning conference; among other things, the order must set a deadline for the completion of all discovery. The scheduling order deadline to complete discovery in this case, begun in 1998, passed long ago.[1]

The consent decree here states, "The Court shall retain jurisdiction of this action for purposes of construction, implementation and enforcement of the terms of this Order." Injunctive Order 12. "Language such as this in a judgment preserves the court's jurisdiction, that is its power, to enforce and interpret a consent decree after it is entered." *Lewis V*, 2024 WL 4346872, at *5 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–92 (1994), and *Jones v. Ass'n of Flight Attendants-CWA*, 778 F.3d 571, 573 (7th Cir. 2015)). Since the court has jurisdiction, the question becomes one of discretion: whether it should be exercised to permit discovery.

A substantial body of case law exists concerning post-judgment discovery in aid of a consent decree. In *United States v. City of Northlake*, 942 F.2d 1164, 1170 (7th Cir. 1991), the Seventh Circuit reversed, as an abuse of discretion, orders denying post-judgment discovery in aid of enforcing a civil rights consent decree similar to the decree in the case at bar. As described in the opinion, the plaintiff presented "prima facie" evidence that the defendant city was violating the consent decree. *id.* at 1169. The Seventh Circuit stated, "[T]his is precisely the sort of case in which [the district court] must allow further discovery and fact-finding on possible violations of the consent decree by the City." *Id.* Cases subsequent to *City of Northlake* indicate

[1] Rule 69(a)(1) provides that proceedings to collect a money judgment, which is not at issue in this case, may be conducted consistent with the procedures of the state where the court sits. Illinois, for example, authorizes discovery, under specified circumstances, by judgment creditors to identify and locate the assets of a judgment debtor. *See generally* 735 Ill. Comp. Stat. 5/2-1402; Ill. Sup. Ct. R. 277; *Dexia Credit Loc. v. Rogan*, 629 F.3d 612, 620–21 (7th Cir. 2010). The judgment in the case at bar awards injunctive relief, *i.e.*, an equitable remedy, however, so Rule 69 and Illinois's procedures for enforcement of a monetary judgment cannot serve as the basis for permitting discovery here. Even if it could, the Seventh Circuit has held that, under Illinois law, the "power to order a party to produce funds includes the power to exercise some minimal control over the party subject to that order—but only when doing so is necessary to protect the court's ability to enforce the underlying order and prevent the loss of assets." *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 188–89 (7th Cir. 2011) (citing *Herbstein v. Bruetman*, 241 F.3d 586, 588–89 (7th Cir. 2001)). Nothing in the present record would fit these limited exceptions allowing the court to exercise authority over the defendant named in the judgment, the City of Chicago, and permit discovery.

that a prima facie case is not required before a party complaining that a court order (a consent decree is a court order) is being violated is entitled to discovery; rather, discovery should be authorized "to the extent necessary to resolve the relevant [factual] disputes." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993); *see Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005); *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 920–22 (7th Cir. 1996); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2024 WL 1254127, at *10 (N.D. Ill. Mar. 25, 2024) (surveying cases concerning the prima facie standard and concluding that a lesser showing is required to obtain discovery); *see also EEOC v. Supervalu, Inc.*, 2013 WL 1154217, at *6–7 (N.D. Ill. Mar. 19, 2013), *recons. denied*, 2013 WL 2451162 (N.D. Ill. June 5, 2013) (holding that *City of Northlake* dictated that discovery should be authorized to determine whether the defendant had violated a Title VII consent decree).

Although many of these cases arise in the context of an allegation that a court order has been violated, the parties here offer no persuasive reason to require a stronger showing in order to obtain discovery preliminary to a Rule 60(b)(5) motion. In many situations where discovery is sought, the publicly available information will not make clear whether a consent decree violation exists, whether a material change has occurred, or whether some combination of the two is involved. Regardless, once it is shown that discovery is likely to aid resolution of a relevant factual dispute, discovery pierces the fog and assists the court in determining an appropriate remedy, if any is needed.

Turning to the case at hand, shortfall plaintiffs have satisfied their burden to show "significant questions as to the violation" of, or as here the need for a modification of, "a court order." *Motorola*, 2024 WL 1254127, at *10 (citing *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008)). They have also shown that discovery will aid resolution of a relevant factual dispute. *See City of Northlake*, 942 F.2d at 1169. Six shortfall plaintiffs have filed declarations under penalty of perjury. Dkt. Nos. 793-1 to 793-6, Ex. A–F. All stand uncontradicted on this record. All shortfall plaintiffs except Angela Horton aver that they sat for one or more of the 2016 promotional examination for the rank of Fire Engineer, the 2017 exam

for the rank of Captain, the 2018 exam for Fire Lieutenant, and the 2019 and 2022 Battalion Chief examinations.[2] Three declarants quantify the effect of the 1999 retroactive seniority date on their respective promotional potential. Shortfall group member Patrick L. McCollum avers:

> 6. For the 2016 Fire Engineer promotion, my seniority points were limited to 16.9 out of 30, reducing my maximum cumulative score to 86.9 out of 100.
>
> 7. My rank on the 2016 Fire Engineer Final Eligibility List was 261. With full seniority points, my rank would have been within the top 30, a reduction of approximately 230 positions due to the limitation.
>
> 8. For the 2019 Fire Lieutenant exam, my seniority points were reduced by approximately 2.2 points, lowering my rank by about 50 positions on the 2019 eligibility list.

Dkt. No. 793-4, Ex. D at 1. Plaintiff Darrell Payne's declaration states:

> 5. My seniority points were reduced by 13.1712 points from the maximum 30 points available, negatively affecting my final ranking by more than 250 positions on the eligibility list.
>
> 6. I also participated in the 2019 Fire Lieutenant promotional examination, announced September 20, 2019, and administered December 15, 2019. My seniority points were reduced by 1.895833 points, negatively affecting my ranking by approximately 36 positions.

Dkt. No. 793-5, Ex. E at 1. And plaintiff Tamala M. Watkins similarly declares under penalties of perjury:

[2] *See* Decl. of R. Shelton ¶¶ 4–6, Dkt. No. 793-1, Ex. A; Decl. of M.J. Chval ¶ 7(d)–(f), Dkt. No. 793-2, Ex. B; Decl. of A. Horton ¶¶ 4–5, Dkt. No. 793-3, Ex. C; Decl. of P.L. McCollum ¶¶ 4–9, Dkt. No. 793-4, Ex. D; Decl. of D. Payne ¶¶ 4–8, Dkt. No. 793-5, Ex. E; Decl. of T.M. Watkins ¶¶ 4–8, Dkt. No. 793-6, Ex. F.

> 5. For the 2016 Fire Engineer promotion, my seniority points were limited to 16.9 out of 30, reducing my maximum cumulative score to 86.9 out of 100.
>
> 6. My rank on the 2016 Fire Engineer Final Eligibility List was 261. With full seniority points, my rank would have been within the top 30, a reduction of approximately 230 positions.
>
> 7. For the 2019 Fire Lieutenant exam, my seniority points were reduced by approximately 2.2 points, lowering my rank by about 50 positions on the 2019 eligibility list.

Dkt. No. 793-6, Ex. F at 1.

The foregoing declarations were not before the court in 2024. Together, they make out a prima facie case that the shortfall group's promotional opportunities are being materially hampered by the 1999 retroactive seniority date. By itself, that showing would not necessarily justify discovery if the seniority date's effects were contemplated when the parties negotiated, and the court approved, the 2011 consent decree. As already explained, plaintiffs must show a material change in circumstances.

Shortfall plaintiff Rodney Shelton's declaration identifies several circumstances he alleges have changed since 2011. *See* Shelton Decl. ¶ 9(a)–(f). Shelton avers that, although shortfall group members are competing with firefighters who took the CFD entrance exam in 2006 and 2014, paramedics who took those exams and became firefighters have been allowed to use their "Paramedic seniority date" as a retroactive seniority date in the Chicago Fire Department. Shelton Decl. ¶¶ 9(a), (c). Shelton does not specify the precise retroactive seniority dates of these paramedics, *see id.*, but it is reasonable to infer that some or all of the advantages conferred by the shortfall group's 1999 retroactive seniority date are reduced or nullified by the City's decision to extend retroactive seniority to paramedics who became firefighters.

The City does not suggest that the extension of retroactive seniority to former paramedics was a circumstance considered when the parties litigated and later agreed upon the terms of the consent decree, and the briefing the parties submitted during the remedies phase makes no mention of retroactive seniority being extended to other groups of CFD applicants. Pls.'

Proposed Discovery Plan & Rev. Mot. for Entry of Inj. & Remedial Relief, Dkt. No. 311 (Apr. 21, 2006); City Mem. Re Remedies at 4, Dkt. No. 358 (Aug. 30, 2026); Firemen's Annuity & Ben. Fund Mem. Re: Remedies at 1 ¶ 2, Dkt. No. 359 (Aug. 30, 2006). Since the consent decree was framed against the backdrop of the parties' expectations and understandings about how the 1999 retroactive seniority date would interact with the seniority and promotion system, shortfall plaintiffs have raised significant questions regarding whether those circumstances have materially changed, such that discovery should be authorized. *See City of Northlake*, 942 F.2d at 1169–70. By authorizing discovery, the court implies nothing about whether a Rule 60(b)(5) modification is warranted because without discovery, the court lacks information material to that decision.

Shortfall plaintiffs propose conducting discovery concerning the City's promotional and seniority decisions, policies, and practices dating to 1999. *See* Mot. Leave to Conduct Discovery 4–7 (listing categories of requested discovery). Plaintiffs submit that this inquiry will allow them to establish the basis in policy and informal practice for the crediting of retroactive seniority to paramedics and any other group dating to the shortfall group's retroactive seniority date. *See id.* at 7–8. The court shares the City's concerns about wide-ranging document production spanning more than twenty-five years of promotional decisions, seniority decisions, and related matters. This matter will therefore be referred to the designated magistrate judge for discovery supervision with instructions to formulate a phased discovery plan that minimizes undue cost and burden. *See* Fed. R. Civ. P. 26(b)(1).

The first phase of discovery must be limited. Discovery should begin by identifying specific promotional and seniority policies, practices, and decisions at issue. The parties should then endeavor, with the magistrate judge's assistance, to formulate a plan for conducting relevant discovery in a manner suited to the limited purpose for which discovery is being authorized: gathering enough information to determine whether circumstances have changed and, if so, how the consent decree should be modified. The parties are cautioned that this order authorizing

discovery should not be read as a blank check permitting inquiry into every promotion- and seniority-related decision made by the City over the past quarter century.

It is not only the time and expense of discovery that is at issue. Complex discovery practice can take years. Meanwhile, members of the shortfall group who took the CFD entrance exam in 1995 may well be reaching retirement age. The parties are strongly encouraged to limit the scope of discovery to what is absolutely necessary to meet the present need, guided by the rule's requirement that discovery be "proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . the parties' relative access to relevant information, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## III. Conclusion

For the reasons stated, and consistent with this opinion, shortfall plaintiffs' motion for leave to conduct post-judgment discovery, Dkt. No. 814, is granted. This case is referred to the designated magistrate judge for discovery supervision with authority to set and adjust discovery deadlines.

Date: August 19, 2026

/s/ Joan B. Gottschall
United States District Judge